Semsa SELIMANOVIC, Alen Selimanovic, Dervis Selimanovic, and Jarvis Selimanovic, Plaintiffs/Appellants,

v.

Daniel P. FINNEY, Jr., d/b/a Daniel P. Finney, Jr., Attorney at Law, Defendant/Respondent.

No. ED 94187.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 1, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 2011.

Application for Transfer Denied May 31, 2011.

Ted F. Frapolli, St. Louis, MO, for appellants.

Michael A Gross, R.C. Wuestling, Wuestling & James, L.C., M. Adina Johnson, St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Plaintiffs filed a lawsuit against defendant attorney, which, as it was submitted to the jury, sought to recover damages for legal malpractice for failing to timely file a wrongful death lawsuit against two of the decedent's co-employees. The jury returned a $2,000,000 verdict in plaintiffs' favor. The trial court granted defendant's motion for a new trial on the ground that it erred in allowing the jury to determine if there was insurance coverage for the claims against the co-employees by submitting the recoverability of damages in the wrongful death action as an element in the verdict director.

Plaintiffs appeal. They claim that even if the trial court erred in submitting the question of insurance coverage to the jury, defendant was not prejudiced because insurance coverage existed as a matter of law. They alternatively argue that the insurance policies were ambiguous, and the resolution of that ambiguity was for the jury. They also assert that defendant invited or waived any error in the submission of insurance coverage to the jury.

Defendant responds that the trial court did not err in ordering the new trial for the following reasons: First, the scope of coverage was not a jury question, and the policies were unambiguous and did not cover plaintiffs' wrongful death claim against the co-employees; second, if the policies were ambiguous, the scope of coverage could only be submitted to the jury with adequate instructions on the issue, and these were not given; and third, there was no invited or waived error. Defendant also argues that his alternate motion for judgment notwithstanding the verdict (JNOV) should be granted because if there was no insurance coverage as a matter of law, then plaintiffs failed to make a submissible case on damages because any wrongful death judgment against the co-employees would not have been collectable.

We reverse and remand with instructions to enter JNOV in defendant's favor.

## FACTUAL AND PROCEDURAL BACKGROUND

Serif Selimanovic (the decedent) was fatally injured on July 19, 2002, while working as a machine operator for his employer, Brentwood Plastics, Inc. The decedent's wife, Semsa Selimanovic, retained an attorney to handle the workers' compensation claim.[1] On August 8, 2002, the decedent's wife and three children (hereinafter, plaintiffs) retained a different attorney, Daniel P. Finney, Jr., (hereinafter, defendant), to represent them in making a wrongful death claim. Defendant did not file a wrongful death lawsuit before the three-year period of the wrongful death statute of limitations elapsed on July 19, 2005. Plaintiffs subsequently filed a lawsuit against defendant to recover damages for legal malpractice.

Prior to the trial of the legal malpractice lawsuit, the circuit judge who was then assigned to the case determined as a matter of law that all of Brentwood Plastics's supervisors or co-employees, except Rusty Caldwell, the plant manager, and Jeff Doscher, the leadman on duty at the time of decedent's death, were immune under the Workers' Compensation Law from a civil lawsuit. That judge entered partial summary judgment on this issue. He further concluded that genuine issues of material fact existed on the issue of whether Mr. Caldwell and Mr. Doscher (hereinafter, the co-employees) were immune from a civil lawsuit. The case then proceeded on the theory that defendant was professionally negligent in not filing a wrongful death lawsuit against the co-employees.

At a pretrial conference, the judge assigned to try the case determined that the insurance policies would be submitted to the jury, and the jury would determine coverage. At trial, uncontroverted evidence was adduced that the co-employees had no assets of their own to satisfy a judgment; that if a wrongful death lawsuit had been filed and an adverse judgment had been entered against them, they would have had to claim bankruptcy; and the effect of bankruptcy would have been to clear an adverse judgment and prevent future garnishment to satisfy the judgment. There was also evidence that any recovery in a wrongful death action against a third party would be subject to a workers' compensation lien in the amount of the benefits paid on behalf of the employee.[2]

Plaintiffs' position at trial was that a wrongful death judgment against the co-employees would have been collectable because two of Brentwood Plastics's insurance policies would have covered the co-employees' liability. These policies were a Commercial General Liability Coverage Form (CGL policy) and a Commercial Excess Liability (Umbrella) Insurance Policy (ELU policy), both of which were in effect on the date of decedent's death.

The trial court crafted and gave its own not-in-MAI verdict director, which submitted the question of insurance coverage to the jury by asking it to find that damages in the unfiled wrongful death action would have been recoverable. Defendant specifically objected to this element in the verdict director on the ground that it was improp-

---

1. Mrs. Selimanovic settled the workers' compensation case in August 2004, and she elected to receive weekly payments.

2. At the time of trial, Mrs. Selimanovic had been paid approximately $190,000 in workers' compensation benefits.

er to submit the issue of collectability to the jury.

After the jury returned a verdict in plaintiffs' favor, defendant filed a motion for a new trial or, in the alternative, for JNOV. Among other claims, defendant's new trial motion asserted the court erred in allowing the jury to determine whether the insurance policies would have covered the plaintiffs' wrongful death action. The JNOV motion alleged in part that plaintiffs did not make a submissible case on the element of damages because they did not adduce any evidence that the co-employees had income, assets, or insurance coverage to satisfy a judgment in the potential wrongful death case, and the co-employees were not covered under the CGL policy or the ELU policy for such an action as a matter of law.

The trial court granted defendant's motion for a new trial. In its order, the trial court determined that it had erred by submitting to the jury the issue of whether the insurance policies would have provided coverage for the wrongful death claims because it was an issue of law. The trial court stated that under the facts of the case, if plaintiffs' claim was not covered by Brentwood Plastics's policies "there can be no sustainable claim of malpractice against defendant Finney as, logically, there can be no legal malpractice in failing to timely file a cause of action for which there is no recovery." The court concluded that its "instructions allowed the jury to determine that a judgment was recoverable based exclusively on a finding by the jury that the Commercial General Liability Insurance policy ... held by Brentwood Plastics would have paid a judgment won by Mrs. Selimanovic. It was error to leave this conclusion of law to the jury." [3]

## DISCUSSION

Plaintiffs' first two points and defendant's response and request for a JNOV all turn on the issue of whether the CGL and ELU policies covered the co-employees as "insureds" in plaintiffs' wrongful death action against them. Plaintiffs argue that the policies unambiguously provided coverage and, therefore, any error in the trial court's submission of coverage to the jury was not prejudicial.[4] Defendant contends that the policies are unambiguous; they do not provide coverage; and, not only was the submission to the jury prejudicial, but defendant is also entitled to JNOV.

If the prevailing plaintiff has appealed the trial court's grant of a new trial, the defendant may contest the submissibility of that plaintiff's case. *Community Title v. Roosevelt Federal S & L*, 796 S.W.2d 369, 370–71 (Mo. banc 1990). If that plaintiff "failed to make a submissible

---

**3.** The order granting a new trial also discussed certain other issues defendant had raised in his motion for a new trial and in his alternate motion for JNOV. The trial court declined to rule on those issues at that time.

**4.** "As with any other contract, the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." *D.R. Sherry Const. v. American Family Mut.*, 316 S.W.3d 899, 902 (Mo. banc 2010). "The interpretation of an insurance policy presents a question of law for the court, not the jury, to decide." *Indiana Lumbermens Mut. Ins. Co. v. Timber-land Pallet & Lumber Co.*, 195 F.3d 368, 375 (8th Cir.1999); *see generally* 30 Mo. Prac. Insurance Law & Practice § 1.38 (2d ed.2009). "The issue of coverage becomes a jury question only when the court determines that the contract is ambiguous and that there exists a genuine factual dispute regarding the intent of the parties." *D.R. Sherry*, 316 S.W.3d at 902. "The trial court commits error when the question of coverage improperly is submitted to the jury." *Id.* at 904. If there were coverage, the error would not be prejudicial. *See id.*

case, the order for new trial must be reversed and the cause remanded for entry of a judgment notwithstanding the verdict." *Id.* at 371; *see also Steward v. Goetz*, 945 S.W.2d 520, 528 (Mo.App.1997).

 "To make a submissible case, a plaintiff must offer legal and substantial evidence for every fact essential to liability." *Savory v. Hensick*, 143 S.W.3d 712, 716 (Mo.App.2004) (citing *Giddens v. Kansas City Southern Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000)). We must "view the evidence and inferences therefrom in a light most favorable to the plaintiffs and disregard all contrary evidence." *Community Title*, 796 S.W.2d at 371 (citing *Day v. Wells Fargo Guard Service Co.*, 711 S.W.2d 503, 504 (Mo. banc 1986)). Our review is *de novo. Savory*, 143 S.W.3d at 716.

 To make a submissible case of legal malpractice, a plaintiff must adduce substantial evidence of each of the following elements: "(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; (4) damages to the plaintiff." *Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. banc 1997) (citing *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 626 (Mo. banc 1995)). In a legal malpractice action, "[t]the measure of damage would be the amount a client would have received 'but for' the attorney's negligence." *Goetz*, 945 S.W.2d at 532.

> Generally, the measure of injury to a cause of action is the value of the claim lost. In other words, the damages for a plaintiff or claimant are what the client would have recovered, less what was recovered plus legally recoverable expenses incurred because of the negligence. What "would have been" recovered requires consideration of the amount that should have resulted and how much was collectable.

RONALD E. MALLEN & JEFFREY M. SMITH, 3 LEGAL MALPRACTICE § 21:4 at 16 (2010) (footnotes omitted); *see also* John E. Theuman, Annotation, *Measure and Elements of Damages Recoverable for Attorney's Negligence in Preparing or Conducting Litigation—Twentieth Century Cases*, 90 A.L.R.4th 1033, 1071–76 (1991).

Since the undisputed evidence was that the co-employees did not have any assets of their own to satisfy a judgment against them, plaintiffs could establish damages for the legal malpractice action only if the CGL policy or the ELU policy would have covered plaintiffs' claims against the co-employees in the unfiled wrongful death action. Accordingly, we must construe those policies.

 If the language in an insurance policy is clear and unambiguous, we must construe and enforce the policy as written. *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008); *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). We read the policy provisions in the context of the policy as a whole, and we give the language used its plain and ordinary meaning unless it is clear from the policy that the parties intended an alternate meaning. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 78 (Mo. banc 1998). An ambiguity exists if the term is "reasonably open to different constructions." *Gavan*, 242 S.W.3d at 720 (quoting *Seeck v. Geico General Insurance Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). However, "an unreasonable alternative construction will not render the term ambiguous." *Gavan*, 242 S.W.3d at 720. "The issue of '[w]hether an insurance policy is ambiguous is a question of law.'" *Id.* (quoting *Todd*, 223 S.W.3d at 160).

1. *The CGL Policy*

As relevant to the parties' contentions on appeal, the CGL policy provides: [5]

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\* \* \*

**SECTION I—COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

**1. Insuring Agreement**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

\* \* \*

 **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\* \* \*

**SECTION II—WHO IS AN INSURED**

\* \* \*

 **2.** Each of the following is also an insured:

 **a.** Your "employees", . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

 **(1)** "Bodily injury" or "personal injury";

 **(a)** To you, . . . or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

 **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above; . . . .

\* \* \*

**SECTION V—DEFINITIONS**

\* \* \*

 **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

Section II.2, which sets out who is an insured, clearly provides in subsections a.(1)(a) and (b) that an employee is not an "insured" for "bodily injury" caused to a co-employee in the course of his or her employment or to the co-employee's family members as a consequence of bodily injury to a co-employee. *See Reese v. U.S. Fire Ins. Co.*, 173 S.W.3d 287, 299 (Mo.App. 2005). *Reese* construed virtually identical policy language, and it held that it "expressly excludes coverage for spouse, children, parents, and siblings of the employee *as a consequence* of the employee's bodily injury," and it reiterated that this language excludes "consequential damage claims" by family members. *Id.* (emphasis added).

The CGL policy language clearly includes death from bodily injury in the definition of "bodily injury." Section V.3 of

---

**5.** We have incorporated the changes made by the 1997 and 1998 endorsements into the 1993 form in the portions of the CGL policy set out in this opinion.

the CGL policy defines "bodily injury" as "bodily injury ... including death resulting from [that injury] at any time." It likewise clearly includes wrongful death damages within damages for "bodily injury," because they are consequential to death, a bodily injury. Section I.A.1.e. of the CGL policy further specifies that damages for "bodily injury" include "damages claimed by any person ... for ... loss of service or death resulting at any time from the 'bodily injury.' "

■ Plaintiffs first argue that the co-employees in this case were "insureds" irrespective of Section II because plaintiffs' wrongful death claim would not have sought recovery for "bodily injury" to decedent. Plaintiffs contend that their wrongful death action would have sought statutory damages for injury representing the loss of decedent's economic support to the statutory class of beneficiaries in which plaintiffs fell as decedent's survivors and not for the injury that caused decedent's death. We disagree with plaintiffs' reasoning.

■ Wrongful death is a statutory cause of action. Section 537.080.1(1) RSMo (2000)[6] provides:

1. Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for:

(1) By the spouse or children ... of the deceased....

The wrongful death statute created a new cause of action that did not exist at common law. *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 (Mo. banc 2009). The statute does not revive a cause of action belonging to the deceased, and the cause of action is neither a transmitted right nor a survival right. *Id.* The damages recoverable include "pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death." Section 537.090. They also include "such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued." *Id.* Under Missouri's wrongful death statute, " 'the right to sue for wrongful death is conditioned on the fact that the decedent could have maintained an action for damages for the injuries sustained had he or she survived.' " *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 766 (Mo.App.2008) (quoting *Super v. White*, 18 S.W.3d 511, 515 (Mo.App.2000)).

The CGL policy provides that damages "because of 'bodily injury' " include damages claimed by any individual for "care, loss of service or death resulting at any time from the bodily injury." The damages recoverable in a statutory wrongful death action are precisely those defined by the policy as damages for "bodily injury" in Section I.A.1.e. of the CGL policy.

■ Plaintiffs next address the consequential damage clause, Section II.2.a.(1)(b). They interpret this clause to mean that the co-employees are insureds

---

**6.** All further statutory references are to RSMo (2000) unless otherwise indicated.

for wrongful death claims brought by an employee's spouse or family because those claims seek statutory consequential damages, which, as plaintiffs argue, are independent from claims for their own bodily injury, for which a co-employee is not an insured under Section II.2.a(1)(b). As previously stated, Missouri courts have held that this language means that employees are not insureds for "bodily injury" to a co-employee occurring in the course of the co-employee's employment or to the spouse or child of that injured co-employee as a consequence of that injury. *Reese,* 173 S.W.3d at 299. Furthermore, even if the language in paragraph (b) were ambiguous, the policy also provides in Section I.A.1.e. that damages "because of 'bodily injury'" include damages claimed by any person for death resulting from the bodily injury. This clause, standing alone, plainly places wrongful death damages within damages "because of 'bodily injury.'"

Finally, plaintiffs argue that their case would have been a "something more" claim against co-employees based on the breach of personal duty owed by the co-employees to decedent and that these are "exactly the type of claims that commercial general liability policies were designed to cover." Plaintiffs' only support for this argument is a Mississippi case, *Architex Ass'n v. Scottsdale Ins. Co.,* 27 So.3d 1148, 1156 (Miss.2010). The issue in *Architex* was whether the insured's use of subcontractors on a construction project precluded the insured from being covered for unexpected and unintended property damage resulting from work performed on the insured's behalf by a subcontractor. *Architex* did not consider "something more" personal injury claims. Plaintiffs do not point to any language in the CGL policy or any relevant case law that supports their argu-

ment that "something more" cases against co-employees are covered by the CGL policy.

In sum, the CGL policy clearly and unambiguously provides that a deceased employee's co-employees are not insureds for wrongful death claims brought by the deceased employee's survivors. Had plaintiffs been awarded a judgment against the co-employees for a wrongful death claim, the CGL policy would not have covered the co-employees' liability.

### 2. *ELU Policy*

As relevant to the parties' contentions on appeal, the ELU policy provides: [7]

## COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE POLICY

\* \* \*

### SECTION I—COVERAGES

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY**

**1. INSURING AGREEMENT**

 a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

\* \* \*

 b. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

\* \* \*

---

7. We have incorporated the changes made by the 1998 and 1999 endorsements into the

1986 form in the portions of the ELU policy set out in this opinion.

**SECTION II—WHO IS AN INSURED**

 \* \* \*

2. Each of the following is also an insured:

 \* \* \*

 h. Any other person or organization insured under any policy of the "underlying insurance". This insurance is subject to all the limitations upon coverage under such policy, and:

 \* \* \*

No person is an insured as respects "bodily injury" to a fellow employee unless insurance for such liability is afforded by the "underlying insurance".

 \* \* \*

**SECTION V—DEFINITIONS**

 \* \* \*

6. "Bodily injury" means bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

 \* \* \*

The Schedule of Underlying Insurance lists two policies, one of which is the CGL policy. The other policy is not in the record.

Plaintiffs make two arguments in support of their claim that the ELU policy would have unambiguously covered their wrongful death claim or, at a minimum, was ambiguous on the question of that coverage.[8] They argue that umbrella policies provide broader coverage than the underlying policies provide and that the absence of a clause excepting claims made by the family members of an injured employee in the ELU policy should be interpreted as providing coverage for family members' claims. We disagree with both arguments.

Plaintiffs' first argument is that "[t]he very nature of an 'umbrella' policy is that its coverage is broader than that afforded by the underlying primary policy," citing a footnote in *Boggs v. Camden–Clark Mem. Hosp. Corp.*, 225 W.Va. 300, 693 S.E.2d 53, 66 n. 21 (2010), that discusses umbrella and excess policies. Plaintiffs' argument rests on an erroneous assumption.

In the first place, this footnote does not purport to lay down a rule for construing an "umbrella" policy. Rather, it is consistent with Missouri cases recognizing that there are many types of excess insurance, including umbrella policies, and many variations of each type:

 Primary insurance first pays toward the loss. Excess insurance then pays after the limit of the primary insurance is exhausted. A separate class of policies is expressly written to provide excess coverage. Designed to cover catastrophic losses, excess insurance policies begin coverage when the underlying coverage ends. Excess insurance can be classified by type: "true excess" or "umbrella" and by form: "following form" and "stand alone." A true excess policy provides coverage above a primary policy for specific risks. An umbrella policy provides coverage over more than one policy, and may cover risks not covered by the primary policy. A following form policy has the same terms and conditions as the primary policy, but has a different liability limit. A stand alone policy has its own terms and conditions

8. Plaintiffs' third argument, that the excess liability policy has the same co-employee exception so it applies equally, is moot because we have determined that the CGL does not provide coverage.

that may vary from the primary policy, . . . .

*Planet Ins. Co. v. Ertz,* 920 S.W.2d 591, 593–94 (Mo.App.1996) (citing ROWLAND H. LONG, 3 THE LAW OF LIABILITY INSURANCE § 22.03 (1995)).

█ Further, we do not interpret an excess policy based on whether it is denominated as an "umbrella" policy, and we specifically do not assume all "umbrella" policies provide broader coverage than the underlying policies. Rather, we look to the specific provisions of an excess policy to determine whether and to what extent its terms and conditions vary from the primary policy. *See Haggard Hauling v. Stonewall Ins.,* 852 S.W.2d 396, 399 n. 1 (Mo.App.1993). Although an umbrella policy may cover risks not covered by the underlying policy, it does not necessarily do so. *See Planet Ins.,* 920 S.W.2d at 594.

█ Plaintiffs next argue that the ELU policy does not contain an "exception to the policy's 'who is an insured' provisions for 'bodily injury' to the spouse, child, parent or sibling of an injured employee," and that the absence of this exception means that family members' claims are covered. It is true that the ELU policy does not include the provision that is in the CGL policy, Section II.2.a.(1)(b), that provides that an employee is not an "insured" for bodily injury to spouses or children of a co-employee as a consequence of such bodily injury or death. Plaintiffs contend that the absence of that provision creates an ambiguity in favor of coverage and that, as a result, their wrongful death claims against the co-employees would have been covered by the ELU policy.

Plaintiffs rely on *Reese,* 173 S.W.3d at 288–91, to support this argument. In *Reese,* a consequential damage claim was specifically excluded in the *employer's* liability section of a Business Auto Insurance Policy but was not excluded under the "Fellow Employee" exclusion in the *same* policy, which applied to claims made against a *fellow employee.* The court held that the policy's failure to exclude such claims against fellow employees, at a minimum, created an ambiguity that should be strictly construed against the insurer. *Id.* at 299. *Reese* involved two separate exclusions in the same policy that treated consequential damage claims differently.

In contrast, this case involves two policies, the ELU policy and the CGL policy, and the ELU policy is restricted by the terms of the CGL policy. Section II of the ELU policy specifically provides: "No person is an insured as respects 'bodily injury' to a fellow employee unless insurance for such liability is afforded by the 'underlying insurance'." Because the CGL policy, which is the "underlying insurance," does not insure employees for claims for their co-employees' injury or death, the co-employees are not insureds for these claims under the ELU liability policy. The fact that the ELU policy does not contain the clause referring to family members' claims does not mean that such claims are covered, because the clause in the ELU policy limiting coverage to that of the CGL policy definitively excludes coverage for any claim for bodily injury to a fellow employee not covered in the underlying policy.

We read the ELU policy as a whole. *Todd,* 223 S.W.3d at 163; *Haggard,* 852 S.W.2d at 399. As we have discussed, the ELU's coverage is plainly subject to all of the CGL's coverage limitations and, specifically, the CGL's coverage for claims made against employees for the bodily injury or death of another employee.

The language of the ELU policy is not ambiguous, and it clearly limits coverage for claims for bodily injury to an employee to the coverage provided in the underlying policy, the CGL. If an employee is not an

"insured" under the CGL, that employee is not an insured under the ELU. Claims for damages "because of 'bodily injury' " to an employee include damages claimed by another person as a consequence of that employee's bodily injury or death under both policies. We have determined that decedent's co-employees are not insureds under the CGL for damages to plaintiffs because of decedent's death, and the co-employees are therefore not insureds under the ELU for damages to plaintiffs because of decedent's death.

The CGL policy and the ELU policy are not ambiguous with respect to the provisions challenged in this appeal. Neither policy would have covered the co-employees' liability if plaintiffs would have been awarded a judgment against them in a wrongful death lawsuit. Points one and two are denied.[9]

*JNOV*

We next consider defendant's request for JNOV. There was no substantial evidence to satisfy the element of recoverability in the legal malpractice action because the co-employees had no assets, and, as a matter of law, they were not "insureds" under Brentwood Plastics's CGL or ELU policies for a wrongful death claim brought against them by the survivors of their co-employee. Plaintiffs therefore failed to make a submissible case of legal malpractice. Defendant is entitled to JNOV in his favor.

*Conclusion*

The trial court erred in not granting defendant's JNOV motion. The judgment ordering a new trial is reversed, and the case is remanded to the trial court for entry of JNOV in defendant's favor.

GLENN A. NORTON, P.J. and GEORGE W. DRAPER III, J., concur.

9. We summarily deny plaintiff's third point. The trial court ruled before and during trial that it was going to submit the issue of coverage to the jury requiring the parties adduce evidence on the issue. Defendant timely objected to the submission of recoverability based on insurance coverage.