

# SUPREME COURT OF MISSOURI
## en banc

KATINA PIATT, ET AL.,         )
                                )
                Appellants,     )
                                )
      v.                    )        No. SC94364
                                )
INDIANA LUMBERMEN'S MUTUAL     )
INSURANCE COMPANY, ET AL.,     )
                                )
              Respondents.    )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Patricia Joyce, Judge

*Opinion issued April 28, 2015*

Prior to this insurance dispute, Linda Nunley was killed while working for a charcoal manufacturer. The plaintiffs obtained a judgment for wrongful death against Junior Flowers, the company's sole owner, director, and executive officer. Flowers assigned his insurance claims to the plaintiffs, and they sued the insurer for breach of duties to defend and indemnify under commercial general liability (CGL) and umbrella policies. The circuit court applied the policies' employee exclusions, which prevented coverage for work-related injuries to employees of the insured, and granted summary judgment for the insurer. This Court agrees, and the circuit court's judgment is affirmed.

### Standard of Review

This Court reviews a grant of summary judgment *de novo*. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011). Summary judgment is appropriate if

there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Rule 74.04(c)(6). The Court views assertions of fact in the light most favorable to the non-movant and draws all reasonable factual inferences in that party's favor. *Goerlitz*, 333 S.W.3d at 453. The Court may affirm summary judgment on any appropriate theory supported by the record. *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 264 (Mo. banc 2013).

## Factual and Procedural Background

Ms. Nunley was killed while working for Missouri Hardwood Charcoal, Inc. The manufacturing process involved kilns with gigantic steel doors. Company policy required removing the doors from time to time and leaning them upright against the kilns. Tragically, one of the doors was blown over by the wind and crushed Ms. Nunley.

Her three children and her mother filed a wrongful death action against Junior Flowers, the company's sole owner, director, and executive officer at the time of Ms. Nunley's death. The petition alleged that Flowers, while engaged as an agent or employee of the company, was negligent in ordering employees to lean the kiln doors upright, even though he knew it was unsafe. The petition also alleged that Flowers breached a "personal duty of care owed to Linda Nunley" and that his actions were "something more" than a breach of the company's duty to provide a safe workplace for employees.

Flowers requested a defense from Indiana Lumbermen's Mutual Insurance Company (ILM). He made this request with respect to two insurance policies: a CGL policy with a limit of $1 million per occurrence and an umbrella policy adding another

$5 million per occurrence. Both policies insure Missouri Hardwood and its executive officers but exclude liability for a work-related injury to an "employee of the insured." Both policies also have "separation-of-insureds" provisions, stating that the insurance applies "[s]eparately to each insured against whom claim is made or suit is brought." ILM declined to defend Flowers, and he retained other counsel.

After litigation not pertinent here,[1] Flowers and the plaintiffs came to an agreement under § 537.065.[2] Pursuant to the agreement, the plaintiffs promised not to collect from Flowers personally, only from his insurance policies. In return, Flowers agreed to setting the case for trial at the circuit court's earliest convenience; to testify truthfully; to waive his rights to a jury trial; to waive his rights to present evidence and make objections and arguments; and to assign his claims against ILM to the plaintiffs. A bench trial on the wrongful death claim resulted in the circuit court entering a $7 million judgment in favor of the plaintiffs. The circuit court's judgment determined Flowers was liable for negligence in maintaining the kiln door policy, "acting under his duties as president, executive officer, and director of Missouri Hardwood Charcoal, Inc." It also found that "Linda Nunley was not Mr. Flowers' employee, but instead she was an employee of the corporation Missouri Hardwood Charcoal, Inc. at all relevant times."

---

[1] Flowers moved to dismiss, arguing that the Workers' Compensation Law provided the plaintiffs' exclusive remedy and, therefore, barred their claims. The circuit court dismissed for lack of subject matter jurisdiction. The court of appeals reversed and remanded, granting Flowers leave to assert his exclusivity argument as an affirmative defense. *Heirien v. Flowers*, 343 S.W.3d 699, 703 (Mo. App. 2011). The plaintiffs then obtained the insurance policies through discovery.
[2] Statutory citations are to RSMo 2000.

3

The plaintiffs then sued ILM and Flowers in this action for equitable garnishment under § 379.200, breach of contract for refusal to defend, declaratory judgment, and vexatious refusal to pay. The plaintiffs and ILM both moved for summary judgment. The circuit court granted summary judgment for ILM. It found that Flowers was Ms. Nunley's employer within the meaning of the insurance policies and based its ruling on the policies' employee exclusions, along with several alternative grounds that need not be discussed. The circuit court's judgment states:

> Under the undisputed facts, Missouri Hardwood Charcoal was Flowers' business. He owned it. He controlled it. He was the sole officer and director. Under these facts, to the extent that Flowers was negligent in failing to provide a safe work environment to Nunley (as stated in the judgment) then Nunley was, in substance, "an 'employee' of the insured [Flowers]," and her injury and death arose out of Flowers' "performing duties related to the conduct of the insured's business."

(Alteration in original.) The plaintiffs appealed, the court of appeals issued an opinion, and this Court ordered transfer. The Court has jurisdiction. *See* Mo. Const. art. V, § 10.

**Analysis**

The plaintiffs argue that the circuit court erred by overruling their motion for summary judgment and granting summary judgment for ILM because ILM was required to defend and indemnify Flowers as an insured "executive officer." They contend that, because Missouri Hardwood was Ms. Nunley's employer, the employee exclusions cannot apply in favor of Flowers. This Court holds that the employee exclusions apply. Regardless of whether Flowers is an insured, Ms. Nunley was an employee, and the injuries that resulted in her death were the result of an unsafe workplace—the claim alleged could only have been brought against an employer.

4

## I.    Duties to Defend and Indemnify

A liability insurer's duties to defend and indemnify are distinct. *Allen v. Continental W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. banc 2014). The duty to indemnify is simply the insurer's obligation to pay for the insured's actual liability if it is covered by the policy. *See* 3 *New Appleman on Insurance Law Library Edition*, § 16.06[1], [3][a] (2014); 14 *Couch on Insurance*, § 200:3 (3d ed. 2014). If there is coverage, § 379.200 allows a judgment creditor to "proceed in equity against the defendant and the insurance company" to recover insurance proceeds.

The duty to defend is broader than the duty to indemnify. *Allen*, 436 S.W.3d at 552. However, it arises only when there is a possibility or potential for coverage at the outset of the case. *Id.* It hinges on facts: "(1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case." *Id.* at 553. Unless these facts support some reasonably apparent theory of recovery against the insured that would give rise to coverage, the insurer has no duty to defend. *See id.* at 553 n.4. The Court assumes Flowers could assign his claim of breach of contract for failure to defend to the plaintiffs because the issue is not in dispute.

## II.    Contract Interpretation

"The interpretation of an insurance policy is an issue of law, subject to *de novo* review." *Id.* at 553. This Court applies the meaning "an ordinary person of average understanding if purchasing insurance" would attach. *Id.* at 553-54. The general rule of interpretation is to give the policy language its plain meaning. *Id.* at 554. Unless the Court finds ambiguity, it does not resort to other principles of interpretation to resolve

5

the dispute. *Id.* "'Definitions, exclusions, conditions, and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.'" *Id.*

### III. CGL and Umbrella Insurance

CGL insurance is generally not intended to cover liability for injuries to employees. *See Ward v. Curry*, 341 S.W.2d 830, 835 (Mo. 1960). The purpose of CGL insurance is to protect businesses against the potentially vast liability that can arise from accidentally injuring members of *the public*. *Id.* at 838-39. Accordingly, CGL policies typically exclude liability for injuries to employees: (1) arising out of the scope of employment; or (2) that are covered by workers' compensation laws. *See id.* at 835, 838-39; *see also Gear Auto. v. Acceptance Indem. Ins. Co.*, 709 F.3d 1259, 1262, 1264-65 (8th Cir. 2013) (citing *Am. Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 29 (Mo. App. 2003)); 3 *New Appleman*, §§ 16.02[3][a][vi][C], 18.03[5]; 9A *Couch*, § 129:10 to 11.

Umbrella policies are supplemental. They increase the amount of coverage beyond the limits of an underlying primary policy, although they often also fill gaps in primary coverage. *See Selimanovic v. Finney*, 337 S.W.3d 30, 39-40 (Mo. App. 2011); *Haggard Hauling & Rigging Co. v. Stonewall Ins. Co.*, 852 S.W.2d 396, 399 n.1 (Mo. App. 1993); 4 *New Appleman*, § 24.02[2][a], [3], [4]; 15 *Couch*, § 220:32. Ultimately, an insurance policy's language determines coverage. *Selimanovic*, 337 S.W.3d at 40; *Haggard*, 852 S.W.2d at 399 n.1; *see Allen*, 436 S.W.3d at 553.

The CGL and umbrella policies at issue here cover liability for bodily injuries, including death, and define "insureds" to include executive officers.  Under the CGL policy, insureds include "executive officers and directors . . . but only with respect to their duties as your officers or directors."  Under the umbrella policy, insureds include "executive officers, directors and stockholders, when they are acting within the scope of their duties as such."

Both policies have employee exclusions[3] and separation-of-insureds provisions. The exclusion in the CGL policy states that the insurance does not apply to "Employer's

---

[3] The CGL policy:

> **2.    Exclusions.**
>> This Insurance does not apply to: . . . .
>> **e.    Employer's Liability**
>>> "Bodily injury" to:
>>>> **(1)** An employee of the insured arising out of:
>>>>> **(a)** Employment by the insured; or
>>>>> **(b)** Performing duties related to the conduct of the Insured's business; or
>>>> **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.
>>> This exclusion applies:
>>>> **(1)** Whether the Insured may be liable as an employer or in any other capacity; and
>>>> **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.
>>> This exclusion does not apply to liability assumed by the Insured under an "insured contract."

 The umbrella policy:

> **EXCLUSIONS**
>> This insurance does not apply to: . . . .
>>> **Y.** "Bodily Injury" to:
>>>> (1) An employee of the insured arising out of and in the course of employment by the insured; or

Liability": "bodily injury to an employee of the insured arising out of employment by the insured; or performing duties related to the conduct of the insured's business." Likewise, the exclusion in the umbrella policy states that the insurance does not apply to "bodily injury to an employee of the insured arising out of and in the course of employment by the insured." The separation-of-insureds provisions state that the insurance applies "as if each named insured were the only named insured; and separately to each insured against whom claim is made or suit is brought."

## V. No Duty to Defend or Indemnify

The plaintiffs argue that there was a potential for coverage at the outset of the wrongful death case because Flowers could not be considered Ms. Nunley's employer. They point to his status as "executive officer," to the separation-of-insureds provisions, and to certain other definitions. They also assert that the circuit court, by considering Flowers the employer, improperly allowed a collateral attack on findings made in the wrongful death judgment and "pierced the corporate veil."[4]

---

(2) The spouse, child, parent, brother, sister or heirs of that employee as a consequence of (1) above.
This exclusion applies:
   a. Whether the insured may be liable as an employer or in any other capacity; and
   b. To any obligation to share damages with or repay someone else who may pay damages because of the injury.
This exclusion does not apply to liability assumed by the insured under a contract or agreement or covered by underlying insurance.

[4] Two other claims need not be addressed. The plaintiffs' claim that ILM waived the employee exclusions by failing to rely on them in the declination letters and emails is not preserved. ILM disclaimed coverage in two separate letters. In the first letter, it did rely in part on the CGL policy's employee exclusion. In the second letter, which concerned the umbrella policy, ILM did not refer to an employee exclusion. Waiver is a distinct claim under *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384 (Mo. banc 1989). The brief filed by the plaintiffs in this Court does not mention this claim in its points relied on and fails to sufficiently develop the argument for

## A.     Flowers Was the Employer

The plaintiffs did not state a claim in the wrongful death case against Flowers apart from his capacity as an agent of the employer.  A corporation can act only through its agents, *Naylor Senior Citizens Housing, LP v. Sides Constr. Co.*, 423 S.W.3d 238, 244 (Mo. banc 2014), and an employer cannot delegate the duty to provide a safe work environment.  *Kelley v. DeKalb Energy Co.*, 865 S.W.2d 670, 672 (Mo. banc 1993).  "Suits against employees personally for breach of the duty to maintain a safe working environment are preempted by the workers' compensation remedy."  *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 621 (Mo. banc 2002), *overruled on other grounds by McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 478-79 (Mo. banc 2009).  An employee may sue a fellow employee only for "'affirmative negligent acts outside the scope of an employer's responsibility to provide a safe workplace.'"  *Id.* at 621-22; *Kelley*, 865 S.W.2d at 672.

The wrongful death petition, which named Flowers as a defendant, alleged that his actions breached a "personal duty" owed to Ms. Nunley and amounted to "something more" than Missouri Hardwood's duty to provide a safe workplace for employees.  However, the only negligence alleged was ordering employees to place the kiln doors upright despite knowing it was unsafe.  The wrongful death judgment ultimately held

this Court's review.  The Court will not consider it.  *See* Rule 84.04(e); *Thummel v. King*, 570 S.W.2d 679, 686-87 (Mo. banc 1978).

The Court also need not address the plaintiffs' claim that the exclusivity principle of the Workers' Compensation Law does not apply when the employer has fewer than five employees because they concede in their substitute brief that they recovered $5,000 in workers' compensation benefits from Missouri Hardwood.  *See* § 287.030.1(3) (stating that employers generally must have five or more employees to be deemed employers for purposes of the Workers' Compensation Law).

9

Flowers liable for negligently maintaining this company policy.[5]  This was a claim of failure to provide a safe workplace, which is exclusively the employer's duty.  *See Wallace*, 73 S.W.3d at 621-22; *Kelley*, 865 S.W.2d at 672.  Regardless of whether Flowers was also an employee of the company, the plaintiffs' claim could only have been asserted against him in his capacity as agent for Ms. Nunley's employer.  *See Wallace*, 73 S.W.3d at 621-22; *Kelley*, 865 S.W.2d at 672; *Naylor*, 423 S.W.3d at 244.  The policies did not cover Flowers' liability for Ms. Nunley's death while she was on the job because he was acting as her employer.[6]

## B.    Separation of Insureds

This Court resolved the meaning of a separation-of-insureds provision in *Baker v. DePew*, 860 S.W.2d 318, 321-24 (Mo. banc 1993).  Insureds are treated separately in CGL policies to prevent an insurer from invoking an employee exclusion on the ground that the injured person's employer happens to qualify as an insured.  *See id.*  In other words, without a separation-of-insureds provision, an insurer could avoid liability under an employee exclusion just because *some* insured was the injured person's employer, regardless of who is seeking coverage.  *See id*.  Separation-of-insureds language prevents

---

[5] "Defendant acting under his duties as president, executive officer, and director of Missouri Hardwood Charcoal, Inc. was negligent in permitting and not changing the policy of leaning kiln doors upright, and in authorizing and requiring such policy to be followed. . . . As a direct result of defendant's negligence, Linda Nunley died."  Findings of Fact and Conclusions of Law, No. 08RE-CC00025-01, at *6, ¶¶ 5-6 (Cir. Ct. of Reynolds Cnty. Apr. 2, 2012) (the wrongful death case); (L.F. 127, ¶¶ 5-6).

[6] As Judge Teitelman notes in dissent, this Court has previously recognized ambiguity in policy language stating that executive officers are insureds "only with respect to their duties as your officers or directors."  *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 508-10 (Mo. banc 1999).  However, this language is irrelevant to whether the employee exclusions apply.  Even if the Court

this by confining the protections offered by employee exclusions to situations where the employer is actually claiming the benefit of the policy. *See id.* This requirement is satisfied here: the plaintiffs claim the benefit of the policy on behalf of Flowers, who was acting as Ms. Nunley's employer.

The cases cited by the plaintiffs, with the exception of one Texas case, reinforce this principle.[7] The Texas Supreme Court's decision in *Chrysler* does not apply because it did not address an employee exclusion, only whether defamation liability was excluded under a "known-falsity" exclusion. 297 S.W.3d at 253. And unlike the insureds who were covered by insurance in the other cited cases, the claim against Flowers was a claim against him solely in his capacity as agent of the employer. *See Bituminous Cas. Corp.*, 599 S.W.2d at 517; *Tri-S Corp.*, 135 P.3d at 87-88, 105; *Barnette*, 653 P.2d at 1376; *Zenti*, 262 N.W.2d at 588; *Bierman*, 292 A.2d at 675-76. The policies' separate treatment of insureds does not prevent Flowers from being considered the employer.

### C. Collateral Attack

The plaintiffs' next argument is that ILM cannot collaterally attack a finding in the wrongful death judgment that Ms. Nunley "was not Mr. Flowers' employee, but instead . . . was an employee of the corporation Missouri Hardwood Charcoal, Inc. at all relevant times." This is essentially a claim of collateral estoppel (also known as issue preclusion).

---

were to consider Flowers an insured, after resolving the ambiguity in favor of the plaintiffs, the clear and unambiguous employee exclusions would still bar coverage.

[7] *Bituminous Cas. Corp. v. Aetna Life & Cas. Co.*, 599 S.W.2d 516 (Mo. App. 1980); *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248 (Tex. 2009); *Tri-S Corp. v. W. World Ins. Co.*, 135 P.3d 82 (Haw. 2006); *Barnette v. Hartford Ins. Grp.*, 653 P.2d 1375 (Wyo. 1982); *Zenti v. Home Ins. Co.*, 262 N.W.2d 588 (Iowa 1978); *Pennsylvania Nat'l Mut. Cas. Ins.*

*See Moore Auto. Grp. Inc. v. Goffstein*, 301 S.W.3d 49, 55 n.4 (Mo. banc 2009). In *Brown v. Carnahan*, this Court held, "[T]o invoke offensive collateral estoppel, it must be pleaded timely in the [plaintiff's] petition." 370 S.W.3d 637, 659 (Mo. banc 2012). Although the petition here incorporates the wrongful death judgment by reference, it does not assert the offensive use of collateral estoppel.

Regardless of whether the petition's allegations are sufficient to assert a collateral estoppel claim, the wrongful death judgment does not preclude a finding that Ms. Nunley was an employee of Flowers when he was acting as agent of Missouri Hardwood. First of all, there was not a single allegation in the wrongful death petition to put ILM on notice that the plaintiffs would present any evidence that Flowers was not Ms. Nunley's employer. To the contrary, the wrongful death petition alleged: "Defendants at all relevant times were foremen and supervisors employed by Missouri Hardwood Charcoal, Inc., and were the foremen and supervisors of decedent Linda Nunley, who was also employed by Missouri Hardwood Charcoal, Inc." While the remaining allegations attempted to claim "something more" than a breach of the duty owed by Missouri Hardwood to provide a safe workplace, as previously mentioned, there were no specific allegations that actually did so. A corporate employer necessarily must meet its nondelegable duty to provide a safe workplace through directors, officers, supervisors, and other types of agents. *See Wallace*, 73 S.W.3d at 621-22; *Kelley*, 865 S.W.2d at 672; *Naylor*, 423 S.W.3d at 244.

---

*Co. v. Bierman*, 292 A.2d 674 (Md. 1972). The plaintiffs also cite *Deters v. USF Ins. Co.*, 797 N.W.2d 621 (Iowa Ct. App. 2011) (unpublished table decision).

Even if the Court were to assume ILM had adequate notice for the factual findings in the wrongful death judgment to be binding, the judgment's finding that Ms. Nunley "was not Mr. Flowers' employee" is not a finding that she was not an "employee of the insured." The plaintiffs' argument ignores the rest of the quoted sentence: "but instead she was an employee of the corporation Missouri Hardwood Charcoal, Inc. at all relevant times." The court in the wrongful death case demonstrated, throughout its other factual findings and conclusions of law, that Flowers's negligence occurred when he was acting on behalf of the corporation, by stating that he was "acting under his duties as president, executive officer, and director of Missouri Hardwood."[8] The wrongful death judgment does not preclude a finding that Ms. Nunley was an employee of Flowers as agent of Missouri Hardwood.

---

[8] Findings of Fact and Conclusions of Law, No. 08RE-CC00025-01, at *1-6 (Cir. Ct. of Reynolds Cnty. Apr. 2, 2012) (the wrongful death case) (citations omitted); (L.F. 122-27):

**I. FINDINGS OF FACT** . . .

6. Acting under his duties as president, executive officer, and director of Missouri Hardwood Charcoal, Inc., Mr. Flowers permitted and required th[e kiln door] practice or policy to remain in effect at all [relevant] times . . . .

12. Mr. Flowers was not an employee of Missouri Hardwood Charcoal, Inc. at any time, and he did not receive a paycheck for his services at any time. . . .

14. . . . Junior Flowers was not a co-employee of Linda Nunley at any time.

15. Acting under his duties as president, executive officer, and director of Missouri Hardwood Charcoal, Inc., Mr. Flowers could have changed the practice or policy of leaning the kiln doors upright by requiring the doors to be placed flat on the ground, but he did not change the standard practice until after April 6, 2007. . . .

17. Defendant Flowers acting under his duties as president, executive officer, and director of Missouri Hardwood Charcoal, Inc., drafted and implemented . . . new policies and procedures, and could have done so before April 6, 2007. . . .

13

## D. Any "Insured" May Be the Employer

The plaintiffs next argue that only a "named insured" can be an employer under the CGL policy because of how "employee" is defined. "Employee" includes a "leased worker," which means "a person leased to you . . . to perform duties related to the conduct of your business." The plaintiffs contend that, because "you" and "your" refer only to named insureds under the policy, only Missouri Hardwood and other named insureds can have employees. This argument fails because the policy unambiguously excludes liability for "bodily injury to an employee of the insured," not just an employee of a named insured.

## E. Piercing the Corporate Veil

The plaintiffs' final argument also lacks merit. A court may "pierce the corporate veil" and ignore corporate formalities to hold the owners of a corporation liable for its

---

19. Defendant Flowers under his duties as president, executive officer and sole director of the corporation at all relevant times before April 6, 2007 knew or should have known in the exercise of reasonable care that Ms. Nunley and other employees of Missouri Hardwood Charcoal, Inc. were exposed to struck by and crushed [sic] by hazards while removing, re-installing, and working near the large Kiln doors, and knew or should have known in the exercise of reasonable care that the kiln doors were leaned upright against the side of the kiln when not in use. . . .

21. Defendant Flowers under his duties as president, executive officer, and director of Missouri Hardwood Charcoal, Inc., did not furnish a place of employment that was reasonably free from recognized hazards that were causing or likely to cause death or serious physical harm to employees including Ms. Nunley. . . .

**II. CONCLUSIONS OF LAW** . . . .

5. Defendant acting under his duties as president, executive officer, and director of Missouri Hardwood Charcoal, Inc. was negligent in permitting and not changing the policy of leaning kiln doors upright, and in authorizing and requiring such policy to be followed.

6. As a direct result of defendant's negligence, Linda Nunley died. . . .

actions under certain circumstances. *See Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 17-18 (Mo. banc 2013). Here, the circuit court ruled that Flowers was Ms. Nunley's employer within the meaning of an insurance policy. It did not hold Flowers liable for Missouri Hardwood's actions. Therefore, it did not pierce the corporate veil.

## Conclusion

These CGL and umbrella policies were intended to insure Missouri Hardwood and its executive officers against liability for accidental injuries to members of the public. The policies accomplished this goal and barred the plaintiffs' claims through unambiguous language that excluded liability to employees. No ordinary person of average understanding purchasing these insurance policies would conclude otherwise. Because there was no potential for coverage at the outset of the wrongful death case, or at any other time, ILM had no duty to defend or indemnify Flowers. Therefore, there is no genuine issue as to any material fact, and ILM is entitled to judgment as a matter of law. The circuit court's judgment is affirmed.

_____
Zel M. Fischer, Judge

Russell, C.J., Breckenridge, Stith,
Draper and Wilson, JJ., concur;
Teitelman, J., dissents in separate opinion filed.

15



KATINA PIATT, ET AL., )
)
               Appellants, )
)
    v. )     No. SC94364
)
INDIANA LUMBERMEN'S MUTUAL )
INSURANCE COMPANY, ET AL., )
)
              Respondents. )

DISSENTING OPINION

A central issue in this case is whether Mr. Flowers, as the sole owner, director and officer of Missouri Hardwood Charcoal, Inc., was acting as an "employer" when he directed employees to lean the kiln doors upright. If Mr. Flowers was acting as an employer, there is no insurance coverage. If, however, Mr. Flowers was acting in his capacity as a corporate officer or director, then he is an "insured" and there may be coverage. The principal opinion holds that there is no coverage because the plaintiffs did not state a claim against Mr. Flowers apart from his capacity as an agent of the employer. I respectfully dissent from this holding because it acknowledges that Mr. Flowers'

company is the employer while assuming that Mr. Flowers' instructions to company employees are beyond the undefined duties of a corporate officer or director.

The insurance policies at issue provide that an executive officer is an "insured" with respect to their duties as officers or directors. Both policies then exclude coverage for injuries to employees arising out of employment by the insured. The insurance policies do not define Mr. Flowers' duties as the president, sole officer and director of the company. Mr. Flowers' duties are defined by the corporate bylaws. The bylaws provide that Mr. Flowers, as the company president, "shall be the principal executive officer of the corporation and shall be in general control and manage the property and business of the corporation." This language does not establish conclusively that Mr. Flowers was acting beyond the scope of his duties as an officer or director when he allegedly directed company employees to lean the doors upright. To the contrary, it is plausible to conclude that Mr. Flowers was specifically acting within his defined role as a corporate officer by attempting to "control and manage the property and business of the corporation" when he directed company employees to lean the kiln door upright. The ambiguity should be construed against the insurer and in favor of coverage. *See Martin v. United States Fid. & Guar. Co.*, 996 S.W.2d 506, 510 (Mo. banc 1999).

The plaintiffs also allege sufficient facts to prevent summary judgment regarding application of the employee exclusion. The allegation that Mr. Flowers implemented and enforced a policy requiring the kiln doors to be propped against walls is sufficient to establish the existence of an extremely dangerous condition sufficient to establish a personal duty of care owed to Ms. Nunley apart from any co-employee relationship. I

2

would reverse the summary judgment in favor of ILM and remand the case for further proceedings.

_____

Richard B. Teitelman, Judge