

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **TRACY LYNN SHERMAN,** | **WD82569** |
| **Appellant,** | **OPINION FILED:** |
| v. | **January 14, 2020** |
| **MISSOURI PROFESSIONALS MUTUAL-PHYSICIANS PROFESSIONAL INDEMNITY ASSOCIATION (MPM),** | |
| **Respondent.** | |

Appeal from the Circuit Court of Boone County, Missouri
The Honorable Jon Edward Beetem, Judge

Before Special Division:
Mark D. Pfeiffer, P.J., Edward R. Ardini, and Thomas N. Chapman, JJ.

Tracy Sherman appeals the judgment of the Boone County Circuit Court in favor of

Missouri Professionals Mutual-Physicians Professional Indemnity Association ("MPM"). Ms.

Sherman filed this equitable garnishment action against MPM seeking to satisfy a $500,000

judgment against MPM's insured, Michael Kaplan, M.D., in a medical malpractice action. The

trial court determined that MPM did not violate its duty to defend and that MPM was not

responsible for a judgment entered in accordance with a section 537.065 agreement between Ms.

Sherman and Dr. Kaplan. The judgment is affirmed.

**Factual and Procedural Background**[1]

MPM issued a medical professional liability policy to insureds, Dr. Kaplan and Dr.

Kaplan's corporate entity, Plastic & Reconstructive Surgery of Mid-Missouri, Inc., for the policy

period of August 1, 2013, to August 1, 2014, with a policy limit of $500,000 per each medical

incident.

On April 18, 2014, Dr. Kaplan performed an abdominoplasty ("tummy tuck") surgery on

Ms. Sherman.  Following the surgery, Ms. Sherman developed an infection near the surgical site.

On July 15, 2014, Ms. Sherman filed a petition for damages related to the tummy tuck

surgery against Dr. Kaplan, his wife Christine Bell-Kaplan, Plastic & Reconstructive Surgery,

and CH Allied Services Inc. d/b/a Boone Hospital Center.  The case was filed in the Boone

County Circuit Court, case number 14BA-CV02328.  The petition set forth three counts:  Count I

for general negligence against Mrs. Kaplan and Plastic & Reconstructive Surgery; Count II for

medical malpractice against Dr. Kaplan and Plastic & Reconstructive Surgery; and Count III for

medical malpractice against Boone Hospital Center.  MPM provided a defense to Dr. Kaplan and

Plastic & Reconstructive Surgery.  It also provided a courtesy defense to Mrs. Kaplan while the

case was pending against Dr. Kaplan and Plastic & Reconstructive Surgery, although she was not

insured under the policy and not a licensed healthcare provider.  Dr. Kaplan, at all times, has

denied liability for any damages suffered by Ms. Sherman.

Through the defense provided by MPM, Dr. Kaplan, Mrs. Kaplan, and Plastic &

Reconstructive Surgery filed a motion to dismiss based on Ms. Sherman's failure to file an

---

[1] In this court-tried case, the evidence and reasonable inferences are viewed in the light most favorable to the judgment, and contrary evidence and inferences are disregarded. *Lewellen v. Universal Underwriters Ins. Co.*, 574 S.W.3d 251, 259 (Mo. App. W.D. 2019).

affidavit of merit required by section 538.225, RSMo 2016. On April 6, 2015, the trial court dismissed Ms. Sherman's claims against Dr. Kaplan and Plastic & Reconstructive Surgery without prejudice, based on the failure to file a section 538.225 affidavit of merit. The general negligence claim against Mrs. Kaplan was not dismissed. No appeal was taken by Ms. Sherman from the dismissal of her medical negligence claims against Dr. Kaplan. After April 6, 2015, there was no action pending against Dr. Kaplan in case number 14BA-CV02328. On April 21, 2015, Boone Hospital Center was (by stipulation) dismissed with prejudice. The only action remaining in case number 14BA-CV02328 as of April 22, 2015, was Ms. Sherman's general negligence claim against Mrs. Kaplan.

On July 7, 2015, Jonathan Downard, the Executive V.P. and General Counsel for MPM, notified Dr. Kaplan by letter that, because the action against him and Plastic & Reconstructive Surgery had been dismissed and Ms. Sherman had not appealed the decision, and because Mrs. Kaplan was not insured under the policy, MPM would no longer provide a defense for Mrs. Kaplan.[2] The next day, July 8, 2015, Ms. Sherman filed a motion for leave to file an amended petition in case number 14BA-CV02328. The proposed amended petition (which was attached to her motion for leave) included the general negligence claim against Mrs. Kaplan in Count I and added a fraud claim under the Missouri Merchandising Practices Act ("MMPA") against Dr. Kaplan and Mrs. Kaplan in Count II.[3] The Proposed Amended Petition (with MMPA Claim) did

---

[2] In particular, the July 7, 2015, MPM letter indicated, "Unfortunately, [Mrs. Kaplan] is not named in the policy nor is she covered by the policy. MPM-PPIA must therefore deny coverage, both indemnity and defense and will provide no further benefits or payment of legal representation for the claim against [Mrs. Kaplan]." At oral argument, Ms. Sherman's counsel conceded that this letter did not constitute a termination or denial of coverage for Dr. Kaplan, ant that it only addressed coverage of Mrs. Kaplan.

[3] Ms. Sherman never called up for hearing her July 8, 2015, motion seeking to file her proposed "First Amended Petition for Damages," which added an MMPA claim against both Kaplans, and that particular "First Amended Petition for Damages" was never actually filed. Mrs. Sherman later sought, and was granted leave on September 28,

3

not include a medical negligence claim against Dr. Kaplan. Ms. Sherman never noticed up this particular motion for leave to file first amended petition for hearing, and it was never ruled on by the judge in case number 14BA-CV02328.

On July 29, 2015, Mr. Downard of MPM sent a letter to Dr. Kaplan advising him that MPM had received a copy of Ms. Sherman's Proposed Amended Petition (with MMPA Claim). The July 29, 2015 MPM letter specifically indicated that "[t]he amended petition fails to make a claim for medical malpractice against [Dr. Kaplan]," and then went on to explain why there was no coverage for the currently filed (or proposed) claims. MPM reiterated its denial of coverage of the currently filed (or proposed) claims against Mrs. Kaplan, who was not a named insured. MPM further stated that the claim alleging a violation of the Merchandising Practices Act against Dr. Kaplan (and Mrs. Kaplan) was a claim for an intentional act of misrepresentation and/or fraud and not one for a medical malpractice, and that the policy excludes such fraud claims from coverage. It denied coverage, both defense and indemnity, for the MMPA fraud claim against Dr. Kaplan. The July 29, 2015 letter made it clear that its refusal to defend was limited to the claims then pending (general negligence against Mrs. Kaplan only) or then proposed (MMPA claims against them both), and, in fact, contrasted them to the type of claims (medical malpractice) it was obligated to defend and indemnify:

> "Based on the information contained in the Plaintiff's First Amended Petition for Damages, the policy provisions, and [policy] language set forth above, MPM-PPIA must deny coverage, both defense and indemnity in this matter. You are advised to retain your own separate attorney to represent you and defend *the claims excluded from coverage under the MPM-PIAA policy.*" (emphasis added).

---

2015, to file a different amended petition, also entitled "First Amended Petition for Damages", which did not include the MMPA claim, and instead refiled the medical malpractice claim against Dr. Kaplan. For the sake of simplicity, we will refer to the initial, and unfiled, amended petition, as "Proposed Amended Petition (With MMPA Claim)," and will refer to the amended petition filed on September 28, 2015, as "First Amended Petition (With Refiled Medical Malpractice Claim)."

4

Like the July 7, 2019 letter, nothing in the July 29, 2015 letter addressed (or denied) the provision of a defense and coverage of a malpractice claim against Dr. Kaplan (should it be refiled). Both letters stated why MPM was providing no defense or coverage of the then currently filed general negligence claim (against Mrs. Kaplan) or for the MMPA claim (against them both) in the Proposed (but never actually filed) First Amended Petition. Neither letter terminated or refused MPM's continued obligation to defend Dr. Kaplan should a medical malpractice claim be filed.

On August 5, 2015, Dr. Kaplan's personal attorney sent a letter to Mr. Downard demanding that MPM fully defend and indemnify Dr. Kaplan and Mrs. Kaplan, and threatening that the Kaplans would enter into a 537.065 agreement with Ms. Sherman if MPM refused, but did not discuss the terms of the proposed agreement. Dr. Kaplan's August 5, 2015 letter did not respond to the reasons stated in the MPM letter for denying defense of the remaining claim against Mrs. Kaplan (or the proposed MMPA claim against Dr. Kaplan). The August 5 letter made no mention of Ms. Sherman's intention to refile the medical malpractice claim against Dr. Kaplan, which had been omitted in the Proposed Amended Petition (with MMPA Claim).

A week later, in a letter dated August 12, 2015, MPM's attorney responded to Dr. Kaplan's attorney's August 5, 2015 letter, again explaining that the policy did not cover Mrs. Kaplan because she was not a named insured on the policy, that there was no claim of medical negligence against Dr. Kaplan alleged in the Proposed Amended Petition (with MMPA Claim), and that the only proposed claim against Dr. Kaplan (under the MMPA) was excluded from coverage under the policy. The August 12, 2017 letter was very clear in limiting its denial of defense and coverage to the claims then filed or proposed:

5

The only pending count against Dr. Michael Kaplan M.D. is alleged under the Missouri Merchandising Practices Act, RSMo. 407. (sic) Therefore, taking into account the procedural posture in this cause and the explicit language in the Policy, no damages can result from the medical negligence of an Insured because there is no claim pending for medical negligence as these counts have been previously dismissed.

The August 12, 2015 MPM letter then went on to explain why there was no coverage for the intentional acts alleged in the proposed (but ultimately never filed) MMPA claim, and then concluded, "You are advised to retain your own separate attorney to represent you and defend *the claims excluded* from coverage under the MPM-PIAA Policy. Should you have any questions concerning this matter please feel free to contact me at your convenience." (emphasis added).

Twelve days later, on August 24, 2015, Dr. Kaplan, Mrs. Kaplan, and Plastic & Reconstructive Surgery entered into a section 537.065 agreement ("537.065 Agreement") with Ms. Sherman.[4] In the 537.065 Agreement, Ms. Sherman agreed that in the event she obtained a judgment against either of the Kaplans, she would levy execution or garnishment only against

---

[4] The statute in effect when the parties entered into the contract provided:

Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. Such contract, when properly acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any county where a judgment may be rendered, or in the county of the residence of the tort-feasor, or in both such counties, and if the same is so recorded then such tort-feasor's property, except as to the assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any judgment rendered against the tort-feasor, arising out of the transaction for which the contract is entered into.

Section 537.065, RSMo 2016.

6

the Kaplans' insurer and would dismiss the other Kaplan with prejudice. The Kaplans agreed to consent to an amended petition being filed in case number 14BA-CV02328 that would reassert the previously dismissed medical malpractice claim without the necessity of including a section 538.225 affidavit of merit. Additionally, the Kaplans agreed to entry of judgment against Dr. Kaplan in an amount up to $500,000, and that the only issue to be decided by the court would be the dollar amount of damages in the judgment. The 537.065 Agreement further stated, "[T]he Kaplans have consistently denied, and continue to deny, any negligent conduct, fraudulent conduct or wrongdoing in connection with the surgery," and "[N]othing herein shall be construed as an admission of liability by Kaplans for the injuries and damages alleged by Sherman arising out of the incident." Dr. Kaplan was not a party to case number 14BA-CV02328 on August 24, 2015, when he entered into the 537.065 Agreement with Ms. Sherman. MPM had no knowledge of the terms of the 537.065 Agreement at the time it was entered into by its insured, Dr. Kaplan. Nor was MPM made aware that its insured intended to stipulate to judgment on a future medical malpractice claim—the same claim which had previously been successfully defended by MPM on behalf of its insured.

The next day, August 25, 2015, Ms. Sherman moved for a special setting for a hearing on a consent judgment in case number 14BA-CV02328. Thereafter, she gave notice scheduling a consent judgment hearing on September 28, 2015, though such notice was not provided to MPM. On September 22, 2015, Ms. Sherman moved for leave to amend her petition in order to add the same medical malpractice claim against Dr. Kaplan that had originally been filed but dismissed because it lacked an affidavit of merit. However, Dr. Kaplan agreed that the medical malpractice claim could be refiled and prosecuted to a judgment up to $500,000 without an affidavit of merit, and agreed that he would waive any right to require it (as was his right under section 538.225).

7

Ms. Sherman and the Kaplans appeared before the court at the September 28, 2015, consent judgment hearing. Ms. Sherman's counsel indicated that MPM had "cut off coverage" and that Ms. Sherman and the Kaplans had entered into a section 537.065 agreement whereby Dr. Kaplan consented to judgment against him and Ms. Sherman agreed to only attempt recovery of the judgment against the insurance policy. The trial court granted Ms. Sherman leave to file her First Amended Petition (With Refiled Medical Malpractice Claim). Ms. Sherman immediately dismissed her action against Mrs. Kaplan. Dr. Kaplan did not file an answer or other responsive pleading to the First Amended Petition (With Refiled Medical Malpractice Claim). At no time did Ms. Sherman file a section 538.225 affidavit of merit in case number 14BA-CV02328. The trial court heard evidence only on Ms. Sherman's damages. Ms. Sherman presented evidence of economic loss of $16,654 related to her claim against Dr. Kaplan, including the cost of the tummy tuck surgery performed by Dr. Kaplan. At the conclusion of the hearing, the court asked, "So are we calling this a consent judgment pursuant to 537.065?" Dr. Kaplan's attorney responded, "Yes, sir." The court asked, "So is everybody in agreement I fill in 500,000 in this blank? Because it's blank." Ms. Sherman's counsel asked for the maximum allowed under the policy, $500,000. The trial court then entered a judgment in favor of Ms. Sherman and against Dr. Kaplan in the amount of $500,000 in case number 14BA-CV02328. MPM had no knowledge of the September 28, 2015, hearing and had no representation at it. Dr. Kaplan did not notify MPM of the First Amended Petition (With Refiled Medical Malpractice Claim) deemed filed on that day.[5]

---

[5] The trial court allowed MPM to intervene after entry of September 28, 2015 judgment and declared the judgment void and set it aside. Ms. Sherman appealed, and this court held that the trial court lacked jurisdiction to grant MPM's motion to intervene and lacked authority to grant MPM's Rule 74.06(b) motion to set aside the judgment, and reinstated the judgment. *Sherman v. Kaplan*, 522 S.W.3d 318, 326-27 (Mo. App. W.D. 2017).

Ms. Sherman filed the instant garnishment action against MPM a month later, on October 29, 2015, and a bench trial was conducted in July 2018. The parties presented jointly stipulated facts and exhibits. MPM presented additional evidence through the testimony of Mr. Downard (its Executive V.P. and General Counsel).

Thereafter, the trial court entered judgment in favor of MPM and against Ms. Sherman. It concluded that MPM did not terminate Dr. Kaplan's insurance coverage or improperly refuse to defend Dr. Kaplan on claims that fell within the policy and which MPM had received notice thereof. The trial court determined that Dr. Kaplan had breached his duties under the policy and was, thus, not entitled to indemnification under the policy. The trial court likewise held that Ms. Sherman was not entitled to garnish insurance policy proceeds from Dr. Kaplan's policy with MPM in her attempt to collect the consent judgment she had obtained against Dr. Kaplan. This appeal by Ms. Sherman followed.

**Standard of Review**

Review of a court-tried equitable garnishment action is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *McDonald v. Ins. Co. of State of Pa.*, 460 S.W.3d 58, 64 (Mo. App. W.D. 2015). Accordingly, the trial court's judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

**Duty to Defend**

In point one of her appeal, Ms. Sherman contends that the trial court misapplied the law in finding that MPM did not violate its duty to defend Dr. Kaplan. She argues that MPM violated its duty to defend Dr. Kaplan when it denied coverage in case number 14BA-CV02328 in its July 29, 2015 letter.

9

An insurer owes two distinct duties to its insured—a duty to defend and a duty to indemnify. *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. banc 2014). "The duty to defend is broader than the duty to indemnify." *Piatt v. Ind. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. banc 2015). The duty to defend arises only when there is a possibility or potential for coverage at the outset of the case. *Id.*; *Allen*, 436 S.W.3d at 552. The potential for coverage must be based on facts (1) alleged in the petition, (2) that the insurer knows at the outset of the case, or (3) that are reasonably apparent to the insurer at the outset of the case. *Piatt*, 461 S.W.3d at 792; *Allen*, 436 S.W.3d at 553. If those facts do not support a potential for coverage, then the insurer has no duty to defend. *Id.* "To extricate itself from a duty to defend the insured, the insurance company must prove that there is no possibility of coverage." *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. App. W.D. 2005) (internal quotes and citation omitted). The duty to defend is determined by comparing the insurance policy language with the allegations in the petition from the underlying lawsuit. *Allen*, 436 S.W.3d at 552.

The interpretation of an insurance policy is an issue of law that is reviewed *de novo*. *Piatt*, 461 S.W.3d at 792; *Allen*, 436 S.W.3d at 553. The general rule in insurance policy interpretation is to give the policy language its plain meaning. *Piatt*, 461 S.W.3d at 792; *Allen*, 436 S.W.3d at 554. "Definitions, exclusions, conditions, and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Id.* (internal quotes and citation omitted).

The medical professional liability policy issued by MPM provided coverage to Dr. Kaplan for professional services rendered. Specifically, section I(a) of the policy provided coverage for a claim for a "**Medical Incident**" that "(i) arose out of an act or omission by an

10

**Insured Individual** or by any person for whose acts or omissions the **Insured Individual** is legally responsible" and that "(ii) occurred while providing, or legally obligated to provide, **Professional Services** for which such persons hold the required licenses." Section II of the policy defined "**Insured Individual**" as "[a] healthcare provider duly licensed and in good standing in Missouri and designated as an **Insured Individual** on the **Policy Declaration**." "**Medical Incident**" was defined as "a single act or omission or a series of related acts or omissions arising out of the rendering of, or the failure to render, **Professional Services** to any one person, which result(s) in, or is likely to result in, damages." "**Professional Services**" was defined as "the provision of medical services in the **Insured's** area of specialty, including medical treatment, making medical diagnoses, and rendering medical opinions or medical advice[.]" The policy excluded certain acts from coverage. Specifically, section IV(f) provided that MPM was not liable for any loss nor obligated to provide a defense to any claim alleging or arising out of "[l]iability arising out of any willful, wanton, fraudulent, criminal, unlawful, or intentionally wrongful activity or any **Insured**, including but not limited to participation by any **Insured** in any conspiracy."

Ms. Sherman's original petition asserted a medical malpractice claim against Dr. Kaplan, as well as a general negligence claim against Mrs. Kaplan. Specifically, the general negligence claim against Mrs. Kaplan alleged that Mrs. Kaplan was negligent in performing or assisting in performing a medical procedure without proper licensure and in failing to inform Ms. Sherman of her role in the procedure. The medical malpractice claim alleged that Dr. Kaplan was negligent in allowing Mrs. Kaplan to perform significant portions of the tummy tuck procedure, in failing to inform Ms. Sherman that Mrs. Kaplan would be performing significant portions of the procedure, and in otherwise improperly performing the procedure.

11

MPM's Executive V.P. and General Counsel Jonathan Downard testified that MPM determined that the medical malpractice claim against Dr. Kaplan fell within the coverage of the policy, and MPM provided a defense to Dr. Kaplan and a courtesy defense to Mrs. Kaplan (while the case was pending against Dr. Kaplan) even though she was not insured under the policy and not a licensed healthcare provider. Through the defense provided by MPM, the medical malpractice case against Dr. Kaplan was dismissed without prejudice on April 6, 2015, based on Ms. Sherman's failure to file an affidavit of merit as required by section 538.225.[6] In that there was no claim to defend for Dr. Kaplan, and in that Mrs. Kaplan was not an insured or a licensed healthcare provider, MPM sent its July 7, 2015 letter, indicating that it would no longer provide a courtesy defense to Mrs. Kaplan (who was the only remaining defendant in the suit).

MPM sent Dr. Kaplan the July 29, 2015 letter in response to Ms. Sherman's Proposed Amended Petition (with MMPA Claim), which contained the same general negligence claim against Mrs. Kaplan and added a fraud claim under the Merchandising Practices Act against both Kaplans. Specifically, the fraud claim alleged that the Kaplans intentionally presented Mrs. Kaplan as a licensed healthcare professional knowing that she was not and never had been one and that their act of intentionally presenting her as such was a clear and direct misrepresentation and a deceptive practice under the Act.

The claims in the Proposed Amended Petition (with MMPA Claim) were not covered under the policy. The fraud exclusion in section IV(f) of the policy barred coverage of the fraud

---

[6] "The affidavit procedure of § 538.225 serves to free the court system from frivolous medical malpractice suits at an early stage of litigation…." *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 510 (Mo. banc 1991). It is "a reasonable means to hinder a plaintiff whose medical malpractice petition is groundless from misuse of the judicial process in order to wrest a settlement from the adversary by the threat of the exaggerated cost of defense." *Id.* at 508.

claim against Dr. Kaplan, and Mrs. Kaplan was not an Insured Individual as defined by section II of the policy. In that the potential for coverage must be based on facts alleged in the petition, or that were known or reasonably apparent to the insurer, *Piatt*, 461 S.W.3d at 792, in that the facts plead in the then pending or proposed pleadings did not support a possibility of coverage, in that there were no facts then known or reasonably apparent to the insurer to give rise to the possibility of coverage (the medical malpractice claim having been dismissed, lacking an affidavit of merit), the insurer had no duty to defend when it indicated (in its letters of July 7 and July 29, 2015) that it would not be providing a defense to the pending (or proposed) claims against Dr. and Mrs. Kaplan. At the time those letters were written, it appeared that Ms. Sherman had abandoned her claim of medical malpractice (having never provided an affidavit of merit), and was pursuing a different claim against Dr. Kaplan (under the MMPA in her Proposed Amended Petition) that was excluded from coverage. Those letters, together with MPM's follow-up letter of August 12, 2015, made it patently clear that MPM was willing to continue to defend any medical malpractice claim against Dr. Kaplan, but that none were then pending or threatened. In fact, at oral argument, counsel for Ms. Sherman agreed that MPM would not have had a duty to indemnify the MMPA claims had they gone forward, and acknowledged that MPM likely would have defended the reasserted medical malpractice claim in the First Amended Petition filed in September 2015, had it been notified. [7]

---

[7] Ms. Sherman argues that MPM violated its duty to defend because, when it denied coverage in the July 29, 2015 letter, Dr. Kaplan had already been sued for medical malpractice for his role in the tummy tuck surgery, and that, although the original medical malpractice case had been dismissed without prejudice, Dr. Kaplan was subject to being deposed in the remaining case against his wife, leaving him vulnerable to the potential medical malpractice claim (as it could be refiled). Ms. Sherman fails, however, to cite any authority supporting this specific argument. In that the facts alleged in the pending or proposed petition did not support coverage, and in that the facts then known to MPM were that Ms. Sherman had not provided an affidavit of merit and had abandoned her medical malpractice claim in her Proposed Amended Petition (with MMPA Claim), there was not then a potential obligation to cover or indemnify the claims being asserted by Mrs. Sherman. *Piatt*, 461 S.W.3d at 792.

13

Despite Ms. Sherman's counsel's statements at the consent judgment hearing that "this is a medical malpractice case" that has "been progressing for a while," the malpractice claim had not been progressing at all, but had instead been dismissed for months (after being successfully defended by MPM-provided counsel) and had been omitted from the Proposed Amended Petition (with MMPA Claim). The malpractice claim had only been allowed to be refiled the very same day as the consent judgment was entered, without notice to MPM and without an affidavit of merit. Nor had MPM "cut off coverage" (as also alleged by Ms. Sherman's counsel at the consent judgment hearing). Rather MPM had declined to defend a person not covered under the policy (Mrs. Kaplan); had declined to defend the abandoned MMPA claim against Dr. Kaplan (that was excluded from coverage); and had made it clear that it was not defending those claims because they were not the sort of claims (i.e. medical malpractice) which would be covered and defended. The July 29, 2015 letter did not terminate malpractice coverage for Dr. Kaplan or refuse to defend any potentially covered claim for professional malpractice. Put in simple terms: MPM did not breach its duty by refusing to defend persons (Mrs. Kaplan) and claims (MMPA) not covered under its policy (as explained in its letter of July 29, 2015). Nor did it breach its duty in failing to defend Dr. Kaplan from Ms. Sherman's malpractice claim – as it had successfully done so at the onset of the suit, and had been provided no opportunity to do so when the malpractice claim was refiled (on the day the consent judgment was entered).

Finally, the general negligence claim arising out of the tummy tuck surgery that remained pending against Mrs. Kaplan did not support the possibility for coverage under the policy. Nor did the proposed (but never filed) fraud claim against Dr. Kaplan support a possibility for coverage. There was simply no claim made against Dr. Kaplan regarding medical services rendered to support a potential for coverage under the policy when MPM sent its letter on July

14

29, 2015. Case number BA-CV02328 then only included uncovered claims. MPM, therefore, did not have a duty to defend. *See Allen*, 436 S.W.3d at 553, 556 (insurer had no duty to defend because there was no potential for coverage for a petition that sought only intentional damages excluded by the policy); *Piatt*, 461 S.W.3d at 793-94 (insurer had no duty to defend because there was no potential coverage for a wrongful death claim asserting only failure to provide a safe work environment, which is exclusively the employer's duty, and the policy excluded employer liability, specifically bodily injury to an employee of the insured arising out of employment by the insured). *But cf. Fostill Lake Builders, LLC v. Tudor Ins. Co.*, 338 S.W.3d 336 (Mo. App. W.D. 2011) (insurer had duty to defend claims alleging that architect had failed to design condominium in compliance with handicap accessibility requirements where such claims were not clearly and unambiguously excluded as discrimination claims under architect's professional liability insurance policy); *Truck Ins. Exch.*, 162 S.W.3d at 82-87 (insurer had a duty to defend where a claim of negligent supervision, although inartfully drafted, was potentially within the policy's coverage even though an alternative respondeat superior claim beyond coverage was also asserted). The trial court in the instant action did not misapply the law in finding that MPM did not breach its duty to defend. Point one is denied.

## Policy Coverage for Consent Judgment

In points two and three, Ms. Sherman contends that the trial court misapplied the law in finding that MPM was not responsible for the consent judgment. The trial court based this finding on two grounds: (1) the consent judgment did not result from an actual trial on the issue of liability or whether the amount of Ms. Sherman's damages was reasonable, and (2) Dr. Kaplan did not comply with the terms and conditions of the policy thereby relieving MPM of its obligations under the policy. Point two challenges the first ground, and point three challenges

15

the second.  Because the second ground (in point three) supports the trial court's finding that MPM was not obligated to indemnify the consent judgment (as will be discussed below), point two need not be addressed.

As a condition precedent to coverage, the MPM policy required Dr. Kaplan to timely report every claim or suit brought against him.  Specifically, section I(c) provided, "Timely **Reporting** to the **Company**…is a condition precedent to coverage under this policy."  Section VII(a) further provided,

> If there is a **Medical Incident** or **Claim** involving any **Insured**, the Insured must comply with the Policy **Reporting** provisions stated in Section I. INSURANCE COVERAGE AGREEMENT at (c) or the **Company** will have no duty or obligation to pay **Loss** or defend that **Claim** or any **Claim** arising out of that **Medical Incident**….If a **Claim** is made or suit is brought against any **Insured**, such **Insured** shall immediately forward to the **Company** every demand, notice, summons or other process received by such **Insured** or such **Insured's** representative.  The **Company** will have no duty or obligation to pay **Loss** or defend any **Claim** where the **Insured** shall fail to forward a demand, notice, summons or other process as provided by this **Policy** and such failure operates to prejudice the rights of the **Company**.

Ms. Sherman contends that, once MPM violated its duty to defend, Dr. Kaplan was relieved of these duties under the policy and was free to enter into the 537.065 Agreement with her.  Ms. Sherman is correct that, where an insurer wrongly refused to defend an insured in litigation, the insurer is precluded from complaining that insured did not cooperate or provide notice of an amended petition.  *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 272 (Mo. banc 2013).  Section 537.065 authorizes a claimant and tortfeasor to contract to limit recovery to specified assets or insurance proceeds.  *Taggart v. Maryland Cas. Co.*, 242 S.W.3d 755, 758 (Mo. App. W.D. 2008).  Section 537.065 settlements are valid only if they are free from fraud and collusion and if the settlement amount is reasonable.  *Id.* (citing *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.2d 810, 815-16 (Mo. banc 1997)).

16

Contrary to Ms. Sherman's contention (and as we concluded in denying point one of her appeal), MPM did not violate its duty to defend Dr. Kaplan. After dismissal of the original medical malpractice claim against Dr. Kaplan, Dr. Kaplan was no longer a party in case number BA-CV02328; and the only remaining claim (general negligence) and defendant (Mrs. Kaplan) were not covered under the policy. Nor was the proposed MMPA claim against Dr. Kaplan covered under the policy. MPM's July 29 letter did not "cut off" malpractice coverage for Dr. Kaplan, and did not unjustifiably refuse to cover the claims that were then actually pending or proposed. Since MPM did not unjustifiably refuse to defend Dr. Kaplan, Dr. Kaplan was not relieved of his duty to notify MPM and to forward it a copy of the Amended Petition (With Refiled Medical Malpractice Claim).

Generally, after an injured person has obtained a judgment against an insured defendant, the judgment creditor stands in the shoes of the insured and has rights no greater than (and no less than) the insured's rights would have been if the insured paid the judgment and then sought reimbursement from the insurer. *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 30 (Mo. 1969). Policy conditions requiring the insured to notify the insurance company of a claim as soon as practicable and forward all legal documents to the insurer are valid and enforceable. *Johnston v. Sweany*, 68 S.W.3d 398, 401 (Mo. banc 2002); *Greer*, 441 S.W.2d at 30. "[O]ne of the factors to be considered in determining if an insured provided notice within a reasonable period of time is whether the insurance company was prejudiced by the delay." *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 11 (Mo. banc 1995)(citing *Greer*, 441 S.W.2d at 32). *See also Johnston*, 68 S.W.3d at 402. Prejudice substantially disabling the insurer in its defense is considered. *Greer*, 441 S.W.2d at 32. The inclusion of a prejudice factor reflects the historical reluctance of Missouri courts to excuse an insurer from its obligations under the policy because of the

17

insured's breach of a policy provision that does not prejudice the insurer. *Tresner*, 913 S.W.2d at 11.

Missouri courts have consistently placed the burden of demonstrating prejudice on the insurer, and the presence or absence of prejudice is typically a question of fact for the fact-finder. *Columbia Cas. Co.*, 411 S.W.3d at 272; *Tresner*, 913 S.W.2d at 11, 16. But when the facts bearing on the issues of whether an insured provided notice to the insurer within a reasonable time and whether the insurer suffered substantial prejudice as a result are not disputed, then the notice issues reflect questions of law. *Columbia Cas. Co.*, 411 S.W.3d at 272. *See also Tresner*, 913 S.W.2d at 14 ("[W]here all reasonable persons would conclude that notice…was not given or made within [a reasonable] time, under all of the circumstances, then it becomes a question of law for the court.").

The evidence on the notice issue was not disputed in this case, and can therefore be decided as a matter of law. The undisputed evidence showed that Dr. Kaplan failed to comply with the policy reporting requirements set forth under section VII(a) mandating that he notify and forward copies of the Amended Petition (With Refiled Medical Malpractice Claim) to MPM. Dr. Kaplan did not notify MPM of (and MPM had no knowledge of) Ms. Sherman's motion for leave to amend her petition, which was filed on September 22, 2015, a month after entering into the 537.065 Agreement and just six days before being granted leave to file it and obtain a consent judgment upon it. MPM had no knowledge of the hearing and no representation at the hearing on September 28, 2015, wherein Ms. Sherman was granted leave to refile the medical malpractice claim, and to obtain (without an affidavit of merit nor any other evidence of causation) a consent judgment in the sum of $500,000.

This undisputed evidence showed that Dr. Kaplan's failure to notify MPM of the new medical malpractice claim prejudiced MPM.  Dr. Kaplan assumed an obligation for a claim that was identical to the one MPM had previously, successfully defended and that failed to cure the previous defect (lack of an affidavit of merit).  MPM did not learn of the 537.065 Agreement, the reasserted medical negligence claim against Dr. Kaplan, or the consent judgment, until after they were entered.  MPM was substantially disabled in its defense and denied the opportunity to protect its interests.  It was deprived of the opportunity to settle the dispute before trial, to defend against liability at trial, and to dispute the amount of damages.  The trial court correctly concluded that, because of Dr. Kaplan's noncompliance with the terms and conditions of the policy, MPM was not responsible for the consent judgment. [8]  Point three is denied.

---

[8] The trial court relied on a line of cases holding that prejudice will be presumed where the failure to forward suit papers to the insurer is unexcused because such a disadvantage is difficult to prove, and it would be unjust to force the insurer to demonstrate prejudice in such a case. *See Rocha v. Metro. Prop. & Cas. Ins. Co.*, 14 S.W.3d 242, 247-248 (Mo. App. W.D. 2000), and *Anderson v. Slayton*, 662 S.W.2d 575, 577-78 (Mo. App. W.D. 1983).  These cases are not necessarily incompatible with Missouri Supreme Court cases that provide that prejudice to the insurer will not be presumed from the mere fact of an insured's delay in giving notice, and the burden is on the insurer to prove prejudice. *See Columbia Cas. Co.*, 411 S.W.3d at 272; *Tresner*, 913 S.W.2d at 11, 16.  As stated, the Missouri Supreme Court has also explained that the issue of prejudice may become a question of law when the facts bearing on the issue are undisputed. *Columbia Cas. Co.*, 411 S.W.3d at 272; *Tresner*, 913 S.W.2d at 14.  Regardless, in reviewing a court-tried case, the appellate court is primarily concerned with the correctness of the trial court's judgment rather than the route taken to reach it. *McQueen v. Gadberry*, 507 S.W.3d 127, 138 (Mo. App. E.D. 2016).  Thus, the trial court's judgment will be affirmed if the appellate court determines that the trial court reached the correct result regardless of whether its proffered reasons are wrong or insufficient. *Id.*  In the instant case, it was not merely a matter of delay in providing notice, as MPM was not apprised of the amended claims until after the consent judgment had been entered.  The undisputed evidence showed that MPM was (as a matter of law) prejudiced by Dr. Kaplan's failure to notify it of the medical malpractice claim before voluntarily agreeing to entry of a judgment against him.

**Conclusion**

The trial court did not misapply the law in concluding that MPM did not violate its duty to defend and that MPM was not responsible for the section 537.065 consent judgment. The judgment of the trial court is affirmed.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Judge

All concur.

20